

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| ROYAL INSURANCE CO. OF AMERICA, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. 6:04-1985-HFF |
| | § |
| LIBERTY CORP., | § |
| | § |
| Defendant. | § |

MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION**

This is a declaratory judgment action brought by Plaintiff Royal Insurance Company of America (Royal) to determine whether coverage exists under an insurance contract. Defendant Liberty Cooperation (Liberty) asserts counterclaims for bad faith, breach of contract, and unreasonable denial. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. Pending before the Court are cross motions for summary judgment. Based on the following, the Court will grant, in part, Liberty's motion for summary judgment and will deny Royal's motion for summary judgment.

## II.     FACTUAL AND PROCEDURAL HISTORY[1]

Liberty, an entity based in Greenville, South Carolina, is primarily in the business of television broadcasting.  One of its stations is KPLC-TV located in Lake Charles, Louisiana.  Royal is an insurance company located in Charlotte, North Carolina.  At issue in the instant case is a contract between Royal and Liberty which provided that Royal would insure certain commercial property for Liberty's television stations.  This property included the stations themselves, tower sites, and other business property.  Liberty's tower site which serviced its KPLC-TV station was covered under the policy, with a location sublimit of $3,550,000 for property damage.

The KPLC tower site consisted of a transmitter building, a storage building, satellite dishes and equipment, and two broadcast towers.  One of these towers had been erected in 1975 (old tower) and the other was erected by a contractor in 2003-04 (new tower).  After completion of the new tower, the contractor was to disassemble the old tower.  Shortly after completing primary–but not all–work on the new tower, the contractor attached a gin pole to the old tower to begin the process of disassembly.  The contractor then detached several guy wires from the old tower and installed temporary guy wires.

On March 4, 2004, before any section of the old tower had been removed, strong winds acted in concert with the gin pole, which had been negligently installed, to cause the old tower to buckle and fall.  While falling, portions of the old tower fell onto the new tower, causing it to fall as well.  The new tower then fell onto the transmitter building and equipment, destroying it.  No portion of either tower remained standing.

---

[1] The parties in this case agree, in large part, on the material facts in this case. Nonetheless, for purposes of each party's motion for summary judgment, the Court views the facts, and recites them here, in a light most favorable to the nonmoving party.

### III.     CONTENTIONS OF THE PARTIES

The parties agree that both the old and new towers are not covered property under the insurance policy. The only dispute here is whether the transmitter building and equipment is covered. Royal asks the Court to declare that no coverage exists. Royal bases this argument on several clauses in the policy. First, the policy provides that "We will not pay for loss or damage caused by or resulting from any of the following: . . . f. collapse, except as provided in the ADDITIONAL COVERAGE–COLLAPSE section of this coverage form." Second, the policy provides that

> We will not pay for loss or damage caused by or resulting from any of the following.
> . . . I. Faulty, inadequate, or defective: . . . (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, impaction; (3) Materials used in repair, construction, renovation or remodeling; or (4) Maintenance; of part or all of any property on or off insured "premises and Location(s).

Royal asserts that the damage to the transmitter building and equipment resulted from the collapse of the towers and, so, is excluded from coverage. Royal argues, in the alternative, that the building and equipment were damaged as a result of the negligence of the contractor in disassembling the old tower, thus triggering the faulty workmanship exclusion.

Liberty counters these contentions by maintaining that the faulty workmanship exclusion does not extend to exclude coverage for secondary damage to the buildings and equipment that were not, themselves, subjected to faulty workmanship. In other words, Liberty posits that the faulty workmanship exclusion would apply only to the building if it had been negligently constructed. As to Royal's argument that the building and equipment are not covered because of the collapse exclusion, Liberty contends that the collapse exclusion is ambiguous and should be construed against Royal.

3

**IV.     STANDARD OF REVIEW**

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Blair v. Defender Servs.*, 386 F.3d 623, 625 (4th Cir. 2004). To demonstrate that he is entitled to judgment as a matter of law, a party moving for summary judgment must first present evidence demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs.*, 945 F.2d 716, 718 (4th Cir. 1991). Once this requirement is satisfied, the burden shifts to the opposing party, who must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Blair*, 386 F.3d at 625 (quoting *White v. Rockingham Radiologists Ltd.*, 820 F.2d 98, 101 (4th Cir. 1987)). In meeting this burden, the party may not rest on allegations made in the pleadings. *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995). Finally, if the evidence is such that a reasonable jury could return a verdict for the non-moving party, summary judgment is inappropriate. *Blair*, 386 F.3d at 625.

In the insurance context, summary judgment is appropriate when the intention of the parties regarding the legal effect of the contract may be gathered from its four corners. *Moss v. Porter Brow., Inc.*, 292 S.C. 444, 447, 357 S.E.2d 25, 27 (Ct.App. 1987). In the instant case, the Court finds disposition of the parties' arguments on coverage to be appropriate at the summary judgment stage because these arguments require reference to facts which are either undisputed or not material to the underlying legal issues.

**V.    DISCUSSION**

*A.    Interpretation of Insurance Contracts*

The parties agree that South Carolina law governs the interpretation of the contract of insurance at issue here.  Under South Carolina law,

> Insurance policies are subject to general rules of contract construction . . . . We must enforce, not write, contracts of insurance and we must give policy language its plain, ordinary, and popular meaning.  We should not torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties.

*Gambrell v. Travelers Ins. Cos.*, 280 S.C. 69, 71, 310 S.E.2d 814, 816 (1983).  Nonetheless, the South Carolina courts have long held that where language used in a policy is ambiguous or is susceptible of two reasonable interpretations, the interpretation favoring the insured is to be adopted.  *E.g., Bennettsville & C.R. Co. v. Glens Falls Ins. Co.*, 96 S.C. 44, 79 S.E. 717 (1913); *Deadwyler v. Grand Lodve, Knights of Pythias*, 131 S.C. 335, 126 S.E. 437 (1925); *Goldston v. State Farm Mut. Auto. Ins. Co.*, 358 S.C. 157, 594 S.E.2d 511 (Ct.App. 2004).  An ambiguity exists where there is "[a]n uncertainty of meaning or intention," or where "any kind of doubtful meaning of words, phrases, or longer [contractual] provisions" arises.  *Black's Law Dictionary* 88 (8th ed. 2004).

*B.    Collapse Exclusion*

In the instant case, the Court finds that both exclusionary clauses relied on by Royal are ambiguous.  The clause excluding damage resulting from or caused by collapse is clearly susceptible to different interpretations.  In fact, the parties in this case both submit competing, yet reasonable, interpretations of the term "collapse."

Royal contends that the clause excludes coverage for the transmitter building and equipment because the towers collapsed onto the building.  As part of this argument, Royal asserts that the

5

towers' fall as a result of wind and a negligently installed gin pole was a "collapse" within the meaning of the policy. Royal further maintains that all damage resulting from this "collapse" was excluded. Liberty, on the other hand, points out that if a "collapse" occurred here, then any event causing the towers to fall would constitute a "collapse" and that any property destroyed would be excluded from coverage. These different interpretations by the parties indicate the ambiguous nature of the term "collapse."

The conclusion that "collapse" is an ambiguous term finds ample support from other sources as well. The Supreme Court of South Carolina has implied, if not explicitly held, that "collapse" is an inherently ambiguous term. *Ocean Winds Council of Co-owners, Inc. v. Auto-owner Ins. Co.*, 350 S.C. 268, 565 S.E.2d 306 (2002). In addition, as the *Ocean Winds* court noted, under the prevailing modern method of construing "collapse," courts find the term ambiguous and apply rules of contract construction. *Id.*, 350 S.C. at 270, 565 S.E.2d at 307.

Further, the Court notes that collapse cannot support as broad of a meaning as Royal contends it does. The parties have agreed that the towers were not covered property in this case because they were in the process of renovation and construction. As such, they were not merely excluded from coverage; they were simply non-covered property. Thus, their falling on the transmitter building is the equivalent of any non-covered property falling on the building. The collapse exclusion in the policy cannot fairly be read so broadly as to exclude damage which results when non-covered property falls onto covered property. Such a reading would defeat almost all coverage and would thus conflict with the policy as a whole. *Cf. Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 459 S.E.2d 318 (Ct.App. 1994) (finding that an internal inconsistency created by an exclusion which purports to bar coverage for claims arising out of the very operation sought to be

insured renders the policy ambiguous). Because "collapse" is ambiguous as used in the policy here, the Court finds that the collapse exclusion should be construed so as to allow coverage for the transmitter building and equipment.

### C.     *Faulty Workmanship Exclusion*

For many of the same reasons, the Court finds that the faulty workmanship exclusion is also ambiguous. First, both parties submit differing, yet reasonable, interpretations of this exclusion. Royal views this clause as excluding coverage for the transmitter building because of faulty workmanship in the dismantling of the old tower. In contrast, Liberty believes the exclusion applies only when the building itself suffers from faulty workmanship.

Secondly, the faulty workmanship exclusion cannot be read to exclude coverage in as broad a manner as Royal suggests. If the Court were to adopt Royal's interpretation of the exclusion, faulty workmanship in non-covered property which results in damage to covered property would be grounds for the exclusion of coverage. Carried to its logical conclusion, this argument would lead to absurd results. For example, a negligently installed engine which causes an airplane flying overhead to crash into the transmitter building would operate to exclude coverage. Similarly, a defect which causes a vehicle used by a contractor at the tower site to explode would defeat coverage for damage to the transmitter building. In the face of this logic, the better reading of the clause leads to the conclusion that it is the building itself which must suffer from faulty workmanship before coverage is excluded. Because an ambiguity exists in this clause (namely, whether faulty workmanship must exist in the

7

building itself or can exist in any object), the Court is obliged to construe the clause so as to allow coverage.[2]

Having determined that both exclusions are ambiguous, the Court finds that Royal's motion for summary judgment must be denied. The Court further finds that Liberty's motion for summary judgment should be granted as to the issue of coverage. Because there has been inadequate development of the record with regard to Liberty's counterclaims for breach of contract, bad faith, and unreasonable denial of coverage, the Court will deny Liberty's motion for summary judgment on these claims at this time. As the Court has found that coverage exists here, Royal's motion for summary judgment on Liberty's counterclaims must also be denied.

## VI.    CONCLUSION

Based on the foregoing, it is the judgment of this Court that Royal's motion for summary judgment should be, and hereby is, **DENIED** and that Liberty's motion for summary judgment should be, and hereby is, **GRANTED IN PART**.

**IT IS SO ORDERED.**

Signed this 1st day of November, 2005, in Spartanburg, South Carolina.

s/ Henry F. Floyd
HENRY F. FLOYD
UNITED STATES DISTRICT JUDGE

---

[2] In so holding, the Court does not offer an opinion on the applicability of the "resulting loss" theory in the instant case. Although the facts here are akin to those analyzed by other courts under this theory, the Court finds that the fact that the towers were non-covered property renders this case different enough that the resulting loss theory need not be applied. In addition, the Court's decision here finds adequate support from other sources without reference to the resulting loss theory.